Opinion
issued June 24, 2010

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-06-00908-CV

————————————

HAROLD EARL WILSON, Appellant

 

V.

 

VERONICA WILSON AND JPMORGAN CHASE BANK, N.A.,
Appellees

 


 
 

 
 
 



On Appeal from the 247th District Court

Harris County, Texas

Trial Court Cause No. 2001-55351

 


 
 
 




 
 
MEMORANDUM OPINION

 

          This
appeal relates to an ongoing divorce dispute between appellant, Harold Wilson,
and appellee, Veronica Wilson.  

          In
this appeal, Harold raises numerous multifarious issues.  Although his briefing is difficult to
decipher, Harold’s primary contentions appear to be that the trial court erred
in its most recent division of the marital estate because the evidence at trial
did not support the division, and the trial court erred in dismissing his
lawsuit against JPMorgan Chase Bank, N.A. (“Chase”), which had been
consolidated into the divorce dispute. 
We modify the judgment to delete the trial court’s pronouncement that
Harold and Veronica are divorced and their marriage is dissolved, and affirm
the judgment as modified.

BACKGROUND

          In
October 2001, Veronica filed
a petition in the 247th District Court of Harris County, seeking a divorce from
Harold and asking for temporary orders and injunctions.  Harold failed to file an answer.  In November 2001, the trial court entered
temporary orders, including orders allowing Veronica exclusive and private use
and possession of several
Chase bank accounts while the case was pending.  In
December 2001, the trial court held a trial at which Veronica testified as the
sole witness.  No exhibits were
admitted.  Several days later, the trial
court signed a final divorce decree containing a “Division of the Marital
Estate” subsection (the “2002 Decree”).  

          Harold
appealed the 2002 Decree to this Court by restricted appeal, arguing in part
that the record was factually insufficient to support the division of assets in
the trial court’s decree.  See Wilson v. Wilson, 132 S.W.3d
533, 538 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).  We agreed and reversed the trial court’s 2002
Decree—but only with respect to the division of the community estate of the
parties and child support award.  Id. 
We remanded the case for a new trial as to these issues.  Id.  We affirmed the 2002 decree in all other
aspects, including the declaration that Veronica and Harold were divorced.  Id. at 538–39.  

          In
2003, while his restricted appeal was pending, Harold filed suit against
Veronica and her attorney in the 247th District Court, the same court in which
the divorce action had been tried.  Harold
also filed suit against Chase in the 127th District Court of Harris County.  Harold’s lawsuit against Chase alleged that
Chase had wrongfully allowed Veronica access to funds that the trial court had
awarded her in its temporary orders. 
Harold’s lawsuit against Veronica and her attorney alleged that they had
misappropriated over $1,000,000, including funds in the Chase bank
account.  

Chase filed a motion to consolidate
Harold’s suit against it into the divorce action.  Instead, the trial court consolidated the
Chase suit with Harold’s suit against Veronica and her counsel, which had been
abated pending the outcome of the divorce. 
However, in June 2005, the Chase suit was severed out of the suit against
Veronica and her attorney, and it was then consolidated with the ongoing
divorce.      In May 2006, the trial court sent a scheduling order to Veronica’s
counsel, indicating that the divorce and the consolidated lawsuit against Chase
were set for trial on June 26, 2006. 
Veronica’s counsel then forwarded this notice to Harold’s counsel by
certified mail and fax.  

On June 16,
2006, ten days before the trial setting for the divorce and consolidated
lawsuit against Chase, Harold filed a motion seeking a continuance of the
divorce action and requesting that the Chase lawsuit be transferred back to the
127th District Court.  In this motion,
Harold acknowledged the trial court’s consolidation of the Chase lawsuit into
the divorce action, but he complained that the parties did not receive notice
of the consolidation.  Harold alleged
that he was unsure what claims were to be tried in the coming trial.  Harold also alleged that his counsel had
scheduling conflicts and asked that the trial be reset.  According to Harold’s counsel, “the Clerk of
the Court agreed to reset the hearing and trial scheduled for June 26, 2006 so
that trial court be held on July 24, 2006.” 


          On June 20, 2006, Harold’s counsel
sent Chase a letter noting his belief that “trial had been reset for July
24.”  This letter was also sent to
Veronica’s counsel.  In response, Chase
indicated its belief that Harold’s lawsuit against it was still consolidated
with his lawsuit against Veronica and her counsel, which had been abated, and
noted that it did not believe that the suit against it had been consolidated
into the divorce action.  

          On June 26, 2006, the scheduled trial
was held on the divorce action and consolidated suit against Chase.  Veronica and Chase appeared, but Harold did not.  The trial court signed an order dismissing
Harold’s claims against Chase, with prejudice, for want of prosecution.  During the trial, Veronica testified about the assets she and Harold
held during their marriage.  The trial
court rendered a final decree of divorce that contained a subsection
entitled “Division of Marital Estate.” 
The divorce decree also stated that “it is ORDERED and DECREED that
VERONICA WILSON, Petitioner, is granted a divorce from HAROLD WILSON, Respondent,
and the marriage between them is dissolved on the grounds of cruelty . . .  This
divorce is officially PRONOUNCED AND RENDERED in court . . . on the 26th
day of June 2006 . . . .”   

          After the trial of the divorce and the
dismissal with prejudice of the claims against Chase, Harold’s counsel received
a postcard from the district clerk informing him that a “partial non-suit” had
occurred on June 26, 2006.  At a hearing
on July 10, counsel for Harold stated that he had seen that the Chase claim had
been dismissed, but he did not know the status of the divorce action.  He was told that the divorce had been granted
and that the marital property had been divided. 
Harold’s counsel attempted to argue his previously filed motions, but
the court informed him that a default had occurred and “the side who shows up
wins.”  

          On July 28, 2006, Harold filed a
motion for new trial and filed a motion to reinstate the Chase claim.  He filed another motion for new trial on August 7.  After an evidentiary hearing, the trial court
denied Harold’s motion to reinstate. 


I.                 
The 2006 “Final Decree of Divorce” and Division of
Marital Property

 

          In
his first issue, Harold argues that—in light of the fact that this Court
previously affirmed their January 8, 2002 divorce—the trial court erred by
granting Veronica and him a second divorce on June 26, 2006.  See
Wilson, 132 S.W.3d at 539.  Harold
also asserts that the trial court erred by failing to require that their
marital assets be fixed as of the January 8, 2002 divorce and by instead
allowing Veronica to testify about the current—i.e., 2006—state of their
marital property.  He additionally complains
that the trial court erred by going beyond the scope of our remand to it by
altering previous injunctions and orders that had been affirmed by this Court. 

          Harold
also contends, in his fourth, fifth, and sixth issues, that the trial court
erred by basing its 2006 division of the marital estate on legally and
factually insufficient evidence.[1]


          A.      Scope of June 26, 2006 Decree

          Harold
contends that the trial court erred by issuing the June 26, 2006 decree,
because the trial court had previously divorced the couple in 2002 and that
divorce was not disturbed by this Court during Harold’s first appeal.  In the 2006 decree, the trial court—for the
second time—stated that it granted Harold and Veronica a divorce and dissolved
their marriage “on the grounds of cruelty.” 
In addition, the 2006 decree provides for the conservatorship, support,
health insurance, possession and visitation of their remaining minor child;
divides the marital estate; and grants a mutual and permanent injunction
prohibiting Harold and Veronica from, among other things, causing each other
bodily harm, communicating in offensive or vulgar language, and destroying,
removing, concealing or otherwise reducing the value of the other’s
property.  

          The trial
court’s rendition of divorce in 2006 was indeed in error because the trial
court’s earlier 2002 decree of divorce was undisturbed by this court on remand.[2]
 Having been divorced in 2002, and there having
been no evidence or allegation that the parties remarried after that date, the
trial court’s statement that the parties were granted a second divorce in 2006
was therefore in error.  However, that
error does not invalidate the remaining portions of the judgment.  See,
e.g., Smith v. Smith, 247 S.W.2d
426, 428 (Tex. Civ. App.—Texarkana 1952, writ ref’d n.r.e.) (where trial court
judgment both annulled marriage and “illegally” granted divorce despite wife’s
insanity, court of appeals held portion granting divorce should be stricken and
remainder of judgment left intact). 
Here, the remaining portions of the judgment relate to the division of
and preservation of Harold and Veronica’s property, and to the protection,
custody and support of their minor child. 
The issue of the division of Harold and Veronica’s community property
was specifically remanded to the trial court by this Court, and the trial court
had continuing exclusive jurisdiction over the issues relating to custody and
support of Harold and Veronica’s remaining minor child.  See,
e.g., Tex. Fam. Code Ann. § 155.001(a) (Vernon 2009);  Chalu
v. Shamala, 125 S.W.3d 737, 739 (Tex. App.—Houston [1st Dist.] 2003, no
pet.).  

Because the trial court’s 2002
judgment granted Harold and Veronica a divorce and dissolved their marriage, we
reform the trial court’s 2006 judgment to delete those portions pronouncing
that the parties were divorced, and the marriage dissolved, in 2006.  

          B.      Standard of Review for Division of Marital
Assets

          We
next turn to the remaining portion of Harold’s complaints regarding the trial
court’s division of assets, as raised in his first, fourth, fifth and sixth
issues.  Harold’s numerous complaints can
be distilled down to his contention that the trial court’s division of the
marital assets is not supported by sufficient evidence.     

          In
a decree of divorce, the court shall order a division of the community estate
in a manner that the court deems just and right, having due regard for the
rights of each party.  Tex. Fam. Code Ann. § 7.001 (Vernon
2006); Rafferty v. Finstad, 903 S.W.2d 374, 376 (Tex. App.—Houston [1st
Dist.] 1995, writ denied).  

Community property is property, other
than separate property, acquired by either spouse during marriage.  See
Tex. Fam. Code Ann. § 3.002
(Vernon 2006).  Separate property is
property owned by a spouse before marriage, acquired during marriage by gift,
devise, or descent, or acquired as a recovery for personal injuries sustained
during the marriage.  See Tex. Fam. Code Ann. § 3.001 (Vernon
2006). Property possessed by either spouse during or on dissolution of marriage
is presumed community property.  Tex. Fam. Code Ann. § 3.003(a) (Vernon
2006); Roach v. Roach, 672 S.W.2d
524, 529 (Tex. App.—Amarillo 1984, no writ). 
To overcome the presumption of community property, the contesting spouse
must prove by clear and convincing evidence that the property is separate.  Tex.
Fam. Code Ann. § 3.003(b) (Vernon 2006). 
“Clear and convincing evidence” is that “measure or degree of proof that
will produce in the mind of the trier of fact a firm belief or conviction as to
the truth of the allegations sought to be established.”  In re
J.F.C., 96 S.W.3d 256, 264 (Tex. 2002).

          In
effecting a just and right division of the community estate, section 7.001 of
the Family Code vests the trial court with broad discretion that will not be
reversed on appeal unless the complaining party shows that the trial court
clearly abused its discretion.  Murff
v. Murff, 615 S.W.2d 696, 698 (Tex. 1981); O’Connor v. O’Connor, 245
S.W.3d 511, 518 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).  “The test of whether the trial court abused
its discretion is whether the court acted arbitrarily or unreasonably, and
without reference to any guiding principles.”  Hailey v. Hailey, 176 S.W.3d 374, 380
(Tex. App.—Houston [1st Dist.] 2004, no pet.).

          “If
the division of marital property lacks sufficient evidence in the record to
support it, then the trial court’s division is an abuse of discretion.”  Raymond
v. Raymond, 190 S.W.3d 77, 83 (Tex. App.—Houston [1st Dist.] 2005, no
pet.).  Nonetheless, “[u]nder an abuse of
discretion standard, legal and factual insufficiency are not independent
reversible grounds of error but are rather relevant factors in assessing
whether the trial court abused its discretion.”  Mai v. Mai, 853 S.W.2d 615, 618 (Tex.
App.—Houston [1st Dist.] 1993, no writ). 
If we find reversible error that materially affects the trial court’s
just and right division of community property, we must remand the cause for a
new division of the community estate.  Jacobs
v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985); Raymond, 190 S.W.3d at
82. 

          Under the abuse of discretion
standard, we review the evidence in the light most favorable to the order and
indulge every presumption in favor of the trial court’s order.  See Walker v. Packer, 827 S.W.2d 833,
839–40 (Tex. 1992); Holley v. Holley, 864 S.W.2d 703, 706 (Tex.
App.—Houston [1st Dist.] 1993, writ denied). 
If some probative and substantive evidence supports the order, there is
no abuse of discretion.  Whitworth v.
Whitworth, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007, no
pet.).  We may not substitute our
judgment for that of the trial court.  In
re Sanders, 153 S.W.3d 54, 56 (Tex. 2004). 


          A
“just and right” division does not require a trial court to divide the marital
estate into equal shares.  Murff, 615 S.W.2d at 698–99 & n.1 (recognizing that
community property need not be equally divided); Schuster v. Schuster,
690 S.W.2d 644, 645 (Tex. App.—Austin 1985, no writ).  A trial court has broad discretion to consider
various factors—including, but not limited to, disparities of incomes, earning
capacities of the parties, financial obligations, fault in the breakup of the
marriage, benefits which the party not at fault would have derived from a continuation
of the marriage, education of each spouse, and the nature of the property to be
divided—when dividing the marital estate. 
Murff, 615 S.W.2d at 698–99. 
As a reviewing court, we presume the trial court exercised its
discretion properly.  Id. at 699 (citing
Bell v. Bell, 513 S.W.2d 20, 22 (Tex. 1974)).

          When,
as here, a trial court makes no separate findings of fact or conclusions of
law, we must presume that the trial court made all the necessary findings to
support its judgment.  Boyd v. Boyd, 131 S.W.3d 605, 611 (Tex.
App.—Fort Worth 2004, no pet.) (citing Pharo
v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996)). We draw every
reasonable inference supported by the record in favor of the trial court’s
judgment.  Gainous v. Gainous, 219 S.W.3d 97, 103 (Tex. App.—Houston [1st
Dist.] 2006, pet. denied).  The trial
court’s judgment must be affirmed it if can be upheld on any legal theory that
finds support in the evidence.  In re W.E.R., 669 S.W.2d 716, 717 (Tex.
1984).  When the appellate record includes
the reporter’s record, the trial court’s implied fact findings are not
conclusive and may be challenged for legal and factual sufficiency of the
evidence supporting them.  See Tucker v. Tucker, 908 S.W.2d 530,
532 (Tex. App.—San Antonio 1995, writ denied).

          C.      Evidence Supporting Division                  

          At trial, Veronica testified regarding
the assets she and Harold owned. 
Veronica stated that Harold “hasn’t asked for anything other than what
we’ve already given him.”  She introduced
an Inventory and Appraisement into evidence, and testified that it was a list
of the couple’s assets and liabilities. 
She also testified that she believed there was some property in Harold’s
possession—including bank accounts, real estate and partnership interests—that
he had not disclosed to her.  She asked
that she be awarded the house in which she was currently living, and that
Harold be awarded the proceeds from a $150,000 promissory note they were owed,
as well as a Lexus and a Jaguar and property in which he had invested without
her knowledge.  

          Veronica admitted that she had
received $249,000 from Chase Bank after the trial court had entered temporary
orders in 2001, and that she had spent this money on household bills, taxes,
and taking care of the house and her children. 
Veronica testified as to money she received from other banks, including
$70,000 garnished from a Sterling Bank account for the trial court’s 2001 award
against Harold for cruelty.  She
explained that one of the couple’s teenage sons had “started getting into a lot
of trouble” and had been “in and out of jail.” 
She also testified that she spent money on tutoring and schooling for
this son and that she purchased him a used BMW to get to his job.  Veronica admitted that her son also had other
legal troubles, and that he had been charged with capital murder.  She testified that she had spent over $20,000
as a retainer for an attorney’s services to assist her son.  

          Veronica testified that she purchased
two other cars during this time, a Cadillac Escalade and an Uplander minivan,
and that she sold the Cadillac to purchase the Uplander.  Veronica also purchased a franchised business
to operate.  Veronica admitted that much
of the money to which she had access “had gone through [her] hands.”  

          Veronica also testified about the
proceeds from Harold’s personal injury lawsuit. 
She stated that Harold received $1,300,000 as a settlement for his
injuries, and that the settlement included sums for lost wages and medical
expenses, and that she received $300,000 as a settlement for lost
consortium.  According to Veronica,
Harold kept both of these amounts for his own use and transferred the sums
between bank accounts as he wished.  She
denied that she had access to the money she received in the settlement for lost
consortium, contending that Harold had kept that money for himself and that he
had comingled the sums they had received and used that money to purchase real
estate and cars without regard to its source. 

          Veronica also testified about mental
and physical abuse she and the children suffered from Harold.  Veronica described several episodes in which
Harold physically attacked her, including once shooting at her and another time
choking her in front of the children. 

          After the close of testimony from
Veronica and her counsel, the trial court granted the requested division of
property.  The trial court awarded
Veronica the home in which she lived, valued at $200,000, and the household
fixtures, valued at approximately $5,400; an Uplander minivan, worth $12,715;
cash in certificates of deposit and accounts in Veronica’s name, approximately
$12,000; two life insurance policies listing Veronica as the insured; and all
interest in the franchise business Veronica testified that she had purchased
for $1,000.  The estimated value of the
property awarded to Veronica was $230,000. 
Harold was awarded several real estate properties, cars as well as the
cash, $150,000 promissory note and securities in his possession.  Veronica was not able to provide a value for
many of the properties awarded to Harold, but those for which she was able to
estimate a value totaled more than $258,000. 


          On the record before us, we do not
find that the trial court erred in its distribution of property.  Harold’s main complaint on appeal appears to
relate to the funds he received from the settlement for his injury—he alleges
that the settlement proceeds were his separate property because he claims they
were to compensate a physical injury. 
Veronica’s uncontradicted testimony, however, revealed that the
settlement funds were for Harold’s physical injury as well as for lost wages
and unpaid medical expenses,[3]
and that these funds were commingled into the couple’s bank accounts and other
assets and thus presumably became community property.  See,
e.g., Estate of Hanau v. Hanau, 730 S.W.2d 663, 667 (Tex. 1987)
(stating that, if evidence shows that separate and community property have been
so commingled as to defy resegregation and identification, community presumption
prevails.).  In addition, Veronica’s testimony was that Harold had the sole access to
these funds, and they were presumably in his possession and part of the trial
court’s award to him.  Our review of the
division thus leads us to conclude that, if anything, the trial court’s
division of the couple’s property appears to tip in favor of Harold.    

          Reviewing the evidence in the light
most favorable to the order and indulging every presumption in favor of the
trial court’s order, we find sufficient evidence supports the trial court’s
division of the property and that the trial court did not abuse its
discretion.  In making this
determination, we are mindful of the disparity in the parties’ financial
situations—i.e., that Harold had access to several real estate partnerships,
investments and a promissory note worth $150,000 as well as two luxury
vehicles, and that Veronica testified she had limited earning capacity and was
responsible for the legal bills for the couple’s adult children—as well as Veronica’s
testimony regarding fault in the breakup of the marriage and the abuse she and
the children suffered.  See, e.g., Murff, 615 S.W.2d at
698–99 (listing factors to consider in division).  We overrule Harold’s complaints regarding the
trial court’s division of assets, as raised in his first, fourth, fifth, and
sixth issues.  

II.              
The Chase Lawsuit

 

          Harold next argues that the trial court erred
by dismissing his lawsuit against Chase and by issuing two final decisions
without severing the dismissed claim. 
For the sake of clarity, we address each part of this issue
separately.  

          




A.              
Dismissal

          Harold
first asserts that the trial court erred by dismissing his suit against Chase
because he alleges the trial court violated section 6.701 of the Texas Family
Code, which prohibits no-answer default judgments against defendants who fail
to appear.  See Tex. Fam. Code Ann.
§ 6.701 (Vernon 2006) (“In a suit for divorce, the petition may not be taken as
confessed if the respondent does not file an answer.”).  Harold
bases this argument upon his assumption that, because his suit against Chase
was consolidated with the divorce action, the provisions of the Family Code
applied to his suit against Chase.  However, even if Harold is correct
in this assumption, we note that this suit was brought by Harold against Chase
and was not resolved by a default judgment, but instead was a dismissal with
prejudice for want of prosecution.  Thus, the judgment did not take Harold’s
petition as “confessed”—instead, the opposite occurred.  Section 6.701 is therefore not implicated on
these facts.  

          Harold next argues that the trial
court was required by Texas Rule of Civil Procedure 165a(1) to give notice and
hold a hearing prior to dismissing his claims against Chase.  Rule 165a allows a trial court to dismiss a
case sua sponte when a party seeking affirmative relief fails to appear for a
hearing of which it has notice or when the case is not disposed of within the
time standards promulgated by the Supreme Court.  Tex.
R. Civ. P. 165a(1), (2); Villarreal
v. San Antonio Truck & Equip., 994
S.W.2d 628, 630 (Tex. 1999); Oliphant Fin.
LLC v. Angiano, 295 S.W.3d 422, 424 (Tex. App.—Dallas 2009, no pet.
h.).  “In addition, the common law vests
the trial court with the inherent power to dismiss independently of the rules
of procedure when a plaintiff fails to prosecute his or her case with due
diligence.”  Villarreal, 994 S.W.2d at 630. 


          Although
Harold complains of the trial court’s failure to hold a hearing prior to
dismissing his suit against Chase, because the trial court subsequently held a
hearing on Harold’s motion to reinstate and considered his arguments for
reinstatement, any due process concerns were remedied.  See Jimenez v. Transwestern Prop. Co.,
999 S.W.2d 125, 129 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  Specifically, a “motion
to reinstate with the opportunity for a hearing cures the due process
violations . . . .”  Finlan v. Peavy, 205 S.W.3d 647, 655–56 (Tex. App.—Waco 2006, no
pet.); see also Wright v. Tex. Dept. of
Criminal Justice-Institutional Div., 137 S.W.3d 693, 695 (Tex. App.—Houston
[1st Dist.] 2004, no pet.); Tex. Sting,
Ltd. v. R.B. Foods, Inc., 82 S.W.3d 644, 648–50 (Tex. App.—San Antonio
2002, pet. denied); Franklin v. Sherman
Indep. Sch. Dist., 53 S.W.3d 398, 402–03 (Tex. App.—Dallas 2001, pet.
denied).

B.              
Final Judgment

          Harold
next argues that because his suit against Chase was not severed out of the
divorce action, the trial court erred by dismissing the claims in an order
separate from the final decree of divorce rather than entering a single,
comprehensive decree.  The gist of Harold’s
argument appears to be that, because the Chase suit had been consolidated into
the divorce action, the trial court erred by issuing two final judgments. 

          Under
Texas Rule of Civil Procedure 301, “[o]nly one final judgment shall be rendered
in any cause except where it is otherwise specially provided by law.”  Tex. R. Civ. P. 301.  A judgment is final
for purposes of appeal when it disposes of all issues and parties.  Lehmann v. Har-Con Corp., 39 S.W.3d
191, 195 (Tex. 2001).  

          Here, after the Chase suit had been
consolidated into the divorce action, the actions merged and proceeded as a
single action.  See H.K. Dev., Inc. v. Nguyen, 229 S.W.3d 415, 432 (Tex.
App.—Houston [1st Dist.] 2007, pet. denied). 
Because the order
dismissing the Chase claim disposed of only one of the issues in the case, it
was interlocutory.  See Lehmann,
39 S.W.3d at 206.  Final judgment, therefore, was not
rendered until the final decree of divorce was signed.  See, e.g., H. B.
Zachry Co. v. Thibodeaux, 364 S.W.2d 192, 193 (Tex. 1963). 
Accordingly, only one final judgment was rendered, and no Rule 301
violation occurred.

          C.      Motion for New Trial or Reinstatement

          Harold next argues that the trial court erred in
failing to grant his motion for new trial or reinstatement of his suit against
Chase.  Following the trial court’s dismissal of his claims
against Chase for want of prosecution, Harold timely filed a verified motion for new
trial or reinstatement, for which no hearing was held and which was overruled by operation of law.  We abated this appeal and remanded to
the trial court for the sole purpose of conducting a hearing on Harold’s motion
to reinstate.  The trial court, after
holding a hearing and considering the evidence, denied the motion.

          After
a case has been dismissed for want of prosecution, “[t]he court shall reinstate
the case upon finding after a hearing that the failure of the party or his
attorney was not intentional or the result of conscious indifference but was
due to an accident or mistake or that the failure has been otherwise reasonably
explained.”  Tex. R. Civ. P. 165a(3); see, e.g., Garcia v. Barreiro, 115
S.W.3d 271, 276–77 (Tex. App.—Corpus Christi 2003, no pet.) (trial court did
not err in denying motion to reinstate when attorney left court, relying on
fact two cases were ahead of appellant’s case on trial docket, without
assurance from court coordinator case would not be reached for trial).  This standard is “essentially the same
as that for setting aside a default judgment.” 
Smith v. Babcock & Wilcox
Const. Co., 913 S.W.2d 467, 468 (Tex. 1995) (per curiam).  A failure to appear is not intentional or due
to conscious indifference merely because it is deliberate; it must also be
without adequate justification.  Id. 
“Proof of such justification–accident, mistake or other reasonable
explanation–negates the intent or conscious indifference for which
reinstatement can be denied.”  Id. 
Further, “conscious indifference means more than mere negligence.”  Id.
at 468.  Whether the failure to appear
was “‘not intentional or the result of conscious indifference,’ is a fact-finding
within the trial court’s discretion.”  Price v. Firestone Tire & Rubber Co.,
700 S.W.2d 730, 733 (Tex. App.—Dallas 1985, no writ); see also Clark v. Yarbrough, 900 S.W.2d 406, 409 (Tex.
App.—Texarkana 1995, writ denied).  The
fact-finder is the sole judge of the credibility of the witnesses and the
weight to be given their testimony.  Hinkle v. Hinkle, 223 S.W.3d 773, 778
(Tex. App.—Dallas 2007, no pet.) (citing City
of Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005)); Garner v. Garner, 200 S.W.3d 303, 308 (Tex. App.—Dallas 2006, no
pet.) (“Because the trier of fact is in a better position to determine the
candor, demeanor, and credibility of the witnesses, we will not substitute our
judgment for that of the trial court.”).

          We
review a trial court’s ruling on
a motion for new trial and a motion to reinstate for an abuse of discretion.  See Strackbein v. Prewitt,
671 S.W.2d 37, 38 (Tex. 1984) (motion for new trial); WMC Mortg. Corp. v.
Starkey, 200 S.W.3d 749, 752 (Tex. App.—Dallas 2006, pet. denied) (motion
to reinstate).  The trial court abuses its discretion if it acts unreasonably or in an arbitrary manner,
without reference to guiding rules or principles.  Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241–42 (Tex. 1985).  

           At the March 2008
hearing on Harold’s motion to reinstate, the thrust of Harold’s argument was
that he did not have notice that (1) the Chase suit was going to be tried on
June 26, 2006, and (2) he believed that the case had reset for July 24,
2006.  However, as his own pleadings make
clear, Harold’s counsel knew that the Chase lawsuit had been consolidated into
the divorce suit, and that both his claims against Chase and the divorce were
to be tried on June 26, 2006.  In fact,
prior to the June 26, 2006 trial, Harold filed a motion for continuance in
which he specifically addressed the “misconsolidation” of the Chase lawsuit
with the divorce action and in which he complained that the consolidation had
occurred without sufficient notice. 
Further, Harold’s motion for continuance asked that the trial on June
26, 2006 be reset due to conflicting engagements on Harold’s counsel’s
calendar, including a mediation scheduled for June 30, 2006 and a family
reunion in Utah.  Finally, in a June 20, 2006 letter to Chase’s trial counsel, Harold’s counsel referred
to the fact that the Chase lawsuit had been consolidated with the divorce suit.  These documents render implausible Harold’s
claim that his counsel was not aware the Chase suit had been consolidated into
the divorce suit.  

          Harold’s counsel swore in an affidavit,
and under oath at the hearing, that he had been told by the court clerk that
the trial in the divorce suit had been reset and would not be held on June
26.  Further, in his letter to Chase’s
counsel on June 20, 2006, Harold’s counsel stated that “[t]he case is set to be
tried now commencing July 24th, 2006.”  However, the record shows that Harold’s
counsel had received a “Scheduling Order and Notice of Intent to Dismiss” informing
him that trial was set for June 26, 2006 at 9:30 a.m.  According to Harold’s counsel’s testimony, he
attempted to secure a continuation of the trial but there is no evidence that
he was actually successful in doing so. 
While Harold’s counsel testified that the court clerk told him that the
case had been reset, the trial court evidently disbelieved this testimony.  The trial judge, as the determiner of
credibility, was in the best position to determine the weight to give Harold’s
counsel’s testimony. Hinkle, 223 S.W.3d at 778; Garner, 200 S.W.3d at 308.

          Thus, the evidence showed that Harold’s
counsel knew the Chase suit had been consolidated into the divorce proceeding,
and that he knew trial in the consolidated case was set on June 26.  Accordingly, we conclude that the trial court did not abuse its
discretion in denying Harold’s motion to reinstate his claims against Chase.  Because
Harold’s request for a new trial relies on the same arguments, we additionally
hold that the trial court did not abuse its discretion in allowing these
motions to be overruled by operation of law. 

III.          
Motion for Continuance

 

          In
his seventh issue, Harold claims that the trial court erred by failing to
permit an emergency setting for his motion for continuance because good cause
existed for a continuance.  Granting or
denying a motion for continuance is within the sound discretion of the trial
court.  Morgan v. City of Alvin,
175 S.W.3d 408, 420 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  However, if a motion for continuance is not
verified or supported by affidavit, the appellate court will presume that the
trial court did not abuse its discretion in denying the
motion.  Id.  Here, Harold’s motion for continuance was
neither verified nor support by an affidavit. 
Therefore, we presume the trial court did not abuse its discretion in
denying the motion.  Harold’s seventh issue is
overruled.

IV.          
Denial of Hearing

 

          In
his eighth issue, Harold asserts that the trial court erred in denying a
hearing on various motions he filed.         While
the record shows that Harold’s counsel filed a notice of submission on these
motions for June 14, at 9:30 a.m., it does not show that he requested an oral
hearing for that date.  Harold fails to
provide any support for his argument that the trial court was bound to set such
motions for hearing after he filed them for consideration by submission.  Further, to succeed on this point, Harold’s briefing would need to point
us to evidence in the record that the motions were timely filed, that he
timely requested a hearing on the motions, and that the court improperly
refused to set such a hearing.  Harold’s
brief fails to do so, and we therefore hold that this issue is waived.  See Tex. R. App. P. 33.1 (to preserve issue for appeal, record must reflect
relief at issue was timely requested from trial court and  that trial court either ruled on the request
or refused to rule and complaining party properly objected to such refusal to
rule).  Harold’s eighth issue is
overruled.    

V.      Due
Process and Open Courts
Doctrine

          Finally, Harold contends that his due process rights were
violated because he was not given due notice or a fair opportunity to prepare
for trial.  He complains of the overall
conduct of the trial court, including the alleged failure of the court to
notify any of the parties that it had consolidated the Chase claim into the
divorce action.  Harold also asserts that
the trial court’s dismissal of the Chase claim without the required notices and its failure to entertain his
motions to clarify and for continuance violated the open courts doctrine.

          First, he specifically argues that the
failure of his motion for continuance to be set before trial resulted in a due
process violation because the trial court’s actions had created an emergency
situation.  However, because we hold above that
the motion for continuance was deficient, the trial court did not err in
failing to set it before trial. 

          Harold also appears to claim that his
due process rights were infringed upon by the trial court’s failure to allow a
hearing on his motion to clarify concerning the court’s consolidation of the
Chase claim into the divorce action. 
However, as we hold above, the trial court did not err in failing to
allow a hearing on this motion.  

 

Conclusion

          We
modify the judgment to delete the trial court’s pronouncement that Harold and
Veronica were divorced and their marriage was dissolved in 2006, and affirm the
remaining portions of the judgment as modified.

                                                          

 

 

                                                                   George
C. Hanks, Jr.

                                                                   Justice

 

Panel consists of Justices Keyes, Alcala, and Hanks. 











[1]           Harold
argues that the trial court should have required an “accounting” of marital
assets from the time of January 8, 2002, the date of the parties’ actual
divorce through the date the remanded marital division was tried on June 26,
2006.  However, there is no evidence in
the record that Harold requested such an accounting from the trial court prior
to the trial, or that he objected to Veronica’s testimony regarding their
respective assets as of 2006. 
Accordingly, we do not reach this issue.  See Tex. R. Evid.
33.1 (to preserve an issue for appeal, record must reflect relief at issue was
timely requested from trial court and that trial court either ruled on
the request or refused to rule and complaining party properly objected to such
refusal to rule).





[2]           Our
judgment and mandate to the trial court in Cause 01-02-00736-CV stated

It is, therefore CONSIDERED, ADJUDGED, and ORDERED
that the decree of the trial court be reversed with respect to the division of the community estate of the parties and
the child support award, and the cause remanded to the trial court
for a new trial on these issues.  It is further CONSIDERED, ADJUDGED, and
ORDERED that the decree of the trial court be affirmed in all
other respects.

 

(emphasis added).





[3]           A
recovery for personal injuries sustained by a spouse during marriage is
generally that spouse’s separate property. 
Tex. Fam. Code Ann. §
3.001(3) (Vernon 2006); Graham v. Franco,
488 S.W.2d 390, 396 (Tex. 1972); Licata
v. Licata, 11 S.W.3d 269, 273 (Tex. App.—Houston [14th Dist.] 1999, pet.
denied).  However, portions of a personal
injury award belong to the community estate, including damages for lost wages,
medical expenses, and other expenses associated with the injury to the community
estate.  Tex. Fam. Code Ann. § 3.001(3); Licata, 11 S.W.3d at 273; Osborn
v. Osborn, 961 S.W.2d 408, 414 (Tex. App.—Houston [1st Dist.] 1997, pet.
denied).  When a spouse receives a
settlement from a lawsuit during marriage, some of which could be separate
property and some of which could be community property, it is that spouse’s
burden to demonstrate which portion of the settlement is his separate
property.  Licata, 11 S.W.3d at 273.